231 So.2d 335

**Daniel BROOM**

**v.**

**STATE.**

**5 Div. 18.**

Court of Criminal Appeals of Alabama.

Nov. 25, 1969.

Rehearing Denied Jan. 13, 1970.

H. Gerald Reynolds, Alexander City, for appellant.

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The indictment charged murder in the first degree. Appellant was convicted of the offense of murder in the second degree. His punishment was fixed at imprisonment for life in the state penitentiary.

**414**

The evidence tends to show that defendant killed one K. C. Avery by stabbing him once in the chest and once in the back. Broom and Avery were inmates of a convict camp at Alexander City, Alabama. Broom was serving a sentence for murder

The question of the sufficiency of the evidence to go to the jury or to sustain the verdict was not raised in any manner.

The trial court defined murder in the first and second degrees and manslaughter in the first degree, but omitted to define manslaughter in the second degree. The defendant objected to the court's failure to charge the jury on manslaughter in the second degree.

Appellant argues in brief that the court's failure to charge on manslaughter in the second degree was reversible error.

In Davis v. State, 246 Ala. 101, 19 So.2d 358, the court pointed out that a mere omission to so charge cannot be made the basis of a reviewable question. "The party's remedy in such cases of mere failure or omission is to request special written instructions according to the practice established by the statutes."

In the instant case the court would have been justified, under the evidence, in refusing a written request, had it been tendered, to submit to the jury the question of manslaughter in the second degree.

Defendant's version of the circumstances surrounding the killing was that Avery came into the recreation hall at the camp where defendant was listening to a radio. After some disparaging remarks about Broom's spending so much time listening to the radio, Avery hit him on the head with his fist three times. Defendant testified:

"We got to tussling then and he had one hand in his pocket and I caught his hand and we got to scuffling there with the knife and I was looking for somebody to break it up but the guards let us fight, so I pulled out mine.

"Q. He had pulled out his knife?

"A. No, sir, he never did get out of his pocket with it.

"Q. What kind of knife did Avery have?

"A. It was just a regular knife.

"Q. A pocket knife?

"A. Yes, sir.

"Q. Did he have it open?

"A. No, sir, he didn't have it open; he was trying to open it.

\* \* \* \* \* \*

"A. So me and him got to tussling with the knife and I just pulled out mine. I held his hands until I got mine.

\* \* \* \* \* \*

"The Court: What kind of knife did you have?

"A. I had a dirk."

The undisputed proof shows that deceased died from wounds intentionally inflicted by a deadly weapon.

"It has long been the settled law of the state that where the evidence shows that the blow which produced death was with a deadly weapon intentionally aimed at the person slain, the homicide, if not excusable on the ground of self-defense, is either murder or manslaughter in the first degree. The law in respect to manslaughter in the second degree is not applicable in such case."

Smith v. State, 243 Ala. 254, 11 So.2d 471.

The judgment is affirmed.

Affirmed.